UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROY EDWARD ATES, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:21-cv-00418-JPH-MG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS AND DENYING MOTION FOR HEARING**

Roy Ates, Jr. is an inmate at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"). He brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 and 2671 *et seq.*, against the United States of America, alleging its officials at USP Terre Haute mismanaged the COVID-19 virus and failed to treat him after he tested positive for COVID. After screening, Mr. Ates was allowed to proceed with three claims under the FTCA: (1) negligence *per se* for failure to ensure that precautions were taken against COVID-19 at the USP Terre Haute (Count I); (2) negligence, again based on a failure to ensure that precautions were taken against COVID-19 (Count II); and (3) negligence for failing to provide adequate and competent medical care after Mr. Ates contracted COVID-19 (Count III). *See* dkts. 18, 32. The United States has moved to dismiss Mr. Ates's claims under Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of jurisdiction and for failure to state a claim upon which relief may be granted. Dkt. 33. Mr. Ates has also filed a motion asking the Court to set a hearing on the motion to dismiss. Dkt. 40. For the reasons stated in this

1

Order, the United States' motion to dismiss, dkt. [33], is **granted** as to Count I and **denied** as to Counts II and III, except that Mr. Ates will be limited to proceeding on a theory of gross negligence. Mr. Ates's motion for a hearing, dkt. [40], is also **denied**.[1]

## I.      Relevant Factual Background

For purposes of deciding the United States' motion to dismiss, the Court accepts as true the allegations in Mr. Ates's complaint. Dkt. 1.[2] At all times relevant to the complaint, Mr. Ates was incarcerated at USP Terre Haute. In March 2020, the President declared a national emergency concerning the COVID-19 pandemic. On April 1, 2020, the director of the federal Bureau of Prisons ("BOP") implemented modified operations at all BOP facilities. The BOP was to implement guidance from the Centers for Disease Control ("CDC") and the

---

[1] The Court recognizes that Mr. Ates has also filed a motion for assistance with recruiting counsel. Dkt. 39. Mr. Ates filed the motion almost a month after he filed his response to the United States' motion to dismiss, and the Court does not understand Mr. Ates to be contending that he needed counsel to respond to that motion. To the extent that he is contending that he needed counsel to respond to the motion to dismiss, the Court finds that Mr. Ates's response was thorough and cogent, thereby demonstrating that he was competent to represent himself for purposes of responding to the motion to dismiss. The Court will address Mr. Ates's motion for assistance with recruiting counsel as to the remainder of the case by separate Order.

[2] The Court declines to consider the 30-plus pages of exhibits that Mr. Ates attached to his response to the motion to dismiss. Dkts. 37-1 through 37-15. The documents were not attached to the complaint, and—even if they had been—the Court would not consider them. While the Court may consider documents attached to a complaint, Mr. Ates must plead a short and plain statement of his claims. Fed. R. Civ. P. 8(a)(2); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). While these exhibits appear to be evidence in support of the claims alleged in the complaint, considering them at this point would circumvent the "simple and plain statement requirement" of Rule 8(a)(2) of the Federal Rules of Civil Procedure and impose an unjustified burden on the Court. *See Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) (stating that attachments to a complaint may be stricken).

World Health Organization ("WHO"). The BOP imposed temporary restrictions on all facilities, which limited visits, transfers, tours, and other activities. The guidance required mandatory screening of staff and inmates. In addition, there was to be a quarantine period for arriving inmates or inmates with COVID-19 symptoms or exposure risk.

Inmates at USP Terre Haute received disposable surgical masks in April 2020, but they were replaced with cloth masks manufactured by Unicor in May 2020. At the time, a Unicor general manager issued a memorandum stating that the cloth masks were not particulate-filtering N95 face masks or considered to be personal protective equipment. The memorandum also stated that Unicor made no warranty that the cloth masks were effective against biohazards, including viral illnesses.

Despite the guidance that had been issued, transfers of inmates from other institutions to USP Terre Haute continued. In addition, inmates were taken to outside medical providers and brought back to USP Terre Haute without being isolated, quarantined, or even screened for possible exposure risks. Inmates were also denied access to N95 masks.

On or about August 19, 2020, an unidentified inmate ("Inmate Doe") was taken to an outside medical treatment provider and returned to Mr. Ates's housing unit without being isolated, quarantined, or screened for COVID-19. That same day, Mr. Ates's housing unit was placed on secure-cell status because of a suspected viral outbreak. The morning of August 21, 2020, USP Terre Haute Nurse Lubbehusen began conducting COVID-19 tests on inmates in Mr. Ates's

housing unit. She performed these tests incorrectly by, among other things, conducting tests without gloves and failing to wash or sanitize her hands between tests. After the tests were completed, over 75 inmates in Mr. Ates's housing unit were found to be positive for COVID-19 infection. A small percentage of those inmates were moved to another housing unit to be quarantined, but the rest—including Mr. Ates—remained in the unit on secure-cell status. Mr. Ates requested a copy of his results from the August 21 test, but he was told that he had no results from that date.

On or about August 27, 2020, a second round of COVID-19 testing was done in Mr. Ates's housing unit, this time using proper procedures. On September 2, 2020, Mr. Ates was notified that he had tested positive for COVID-19. Eight days later, medical staff informed Mr. Ates and other inmates in his unit that they were "recovered" without any further testing or medical examination.

Immediately before Mr. Ates tested positive for COVID-19, he began experiencing significant respiratory dysfunction, including shallow, raspy breathing and an inability to draw a deep breath. Mr. Ates still experiences these symptoms.

On or about December 1, 2020, Mr. Ates made a medical triage request to medical staff, complaining about lung problems and stating that he was not, in fact, "recovered" from COVID-19. At the time, USP Terre Haute medical staff knew or had reason to know that the CDC had identified short- and long-term adverse health consequences associated with COVID-19, including shortness of

4

breath, chest pain, and lung function abnormalities. Mr. Ates was placed in an isolation unit. He was tested for COVID-19 on December 7, 2020, and the results were negative. He remained in the isolation unit for 21 days, but he was never examined by medical staff in connection with his complaints of lung problems. He tested negative for COVID-19 again on December 21, 2020, and was released back to his old housing unit. Mr. Ates has never received any treatment or care for his lung dysfunction.

## II. Discussion

The United States moves to dismiss all of Mr. Ates's claims arguing: (1) the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d to 247d-10 ("PREP Act"), gives the United States immunity from liability for any injury arising from the BOP's decision to provide cloth masks instead of N95 masks and its administration of COVID-19 diagnostic tests; (2) Indiana's COVID-19 immunity statute bars Mr. Ates's claims; (3) the Court lacks jurisdiction over Counts I and II under the FTCA's quarantine exception; (4) Mr. Ates has failed to adequately allege negligence *per se* in Count I; and (5) Mr. Ates has failed to adequately allege causation in Counts I and II.

### A. PREP Act Immunity

The United States argues that Mr. Ates's claims should be dismissed insofar as Mr. Ates seeks to hold the United States liable for providing cloth masks instead of N95 masks and for the negligent administration of COVID-19 diagnostic tests. Dkt. 34 at 17–25. In support, it relies on the PREP Act, which provides "immun[ity] from suit and liability under Federal and State law with

5

respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a [PREP Act] declaration . . . has been issued [by the Secretary for the Department of Health and Human Services] with respect to such countermeasure." 24 U.S.C. § 247d-6d(a)(1). In response, Mr. Ates argues that "PREP Act immunity is not triggered" because he intended his references to the BOP's failure to provide N95 masks and the negligent administration of COVID-19 tests only to be "illustrative of the overall disregard for known risks" and not claims that these actions proximately caused him to contract COVID-19. Dkt. 37 at 26. Instead, he clarified, he was claiming only that he contracted COVID-19 because the BOP failed to isolate Inmate Doe after Inmate Doe returned from a medical appointment.[3] In reply, the United States concedes that this clarification renders its PREP Act argument moot. Dkt. 38 at 7.

Thus, the United States' motion to dismiss is **denied as moot** insofar as it relies on the PREP Act.

### B. Indiana's COVID-19 Immunity Statute

The United States argues that all of Mr. Ates's claims should be dismissed under Indiana's COVID-19 immunity statute because the claims relate to COVID-19, and Mr. Ates has failed to allege gross negligence or willful or wanton

---

[3] The Court understands Mr. Ates's argument to be an abandonment of any claims for negligence based on the provision of cloth masks instead of N95 masks and the improper administration of COVID-19 tests. Having conceded that he is not pursuing such claims to avoid PREP Act coverage, the Court will not allow him to revive them later in this proceeding. Instead, Counts I and II will proceed only on the theory that prison staff were negligent in their handling of Inmate Doe after he returned from an outside medical appointment, thereby causing Mr. Ates to contract COVID-19.

6

misconduct. Dkt. 34 at 10–13. In response, Mr. Ates argues that the COVID-19 immunity statute does not apply to the federal BOP or federal employees and that he has adequately alleged gross negligence. Dkt. 37 at 21–23. In reply, the United States notes that Mr. Ates did not specifically plead a gross negligence claim. Dkt. 38 at 5.

Indiana Code § 34-30-32-6 provides immunity to certain civil actions arising from COVID-19. It states the following:

> Subject to the other provisions of this chapter, a person is immune from civil tort liability for damages arising from COVID-19:
>
> (1) on the premises owned or operated by the person;
> (2) on any premises on which the person or an employee or agent of the person provided property or services to another person; or
> (3) during an activity managed, organized, or sponsored by the person.

Ind. Code § 34-30-32-6. However, this statute "does not grant immunity from civil tort liability to a person whose actions or omissions constitute gross negligence or willful or wanton misconduct (including fraud and intentionally tortious acts) as proven by clear and convincing evidence." *Id.* § 34-30-32-7.

Mr. Ates argues that the COVID-19 immunity statute does not apply to the BOP, the federal government, or federal employees because there is no mention of "federal" institutions or employees. Dkt. 37 at 23. But Indiana's COVID-19 immunity statute must be read in context with the FTCA. The plain language of the FTCA provides that the United States is liable for money damages for personal injury caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her employment "under circumstances, where the United States, if a *private person*,

would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1) (emphasis added). Under Indiana's COVID-19 immunity statute, in the absence of gross negligence or willful or wanton misconduct, private persons are not liable for damages arising from COVID-19 on premises they own or operate. Ind. Code §§ 34-30-32-6, 34-30-32-7.

Thus, the United States' liability in civil actions for damages arising on its property from COVID-19 in Indiana is limited to circumstances where its conduct constitutes gross negligence or willful or wanton misconduct—just as it would be if the United States were a private owner or operator of its premises. *See* 28 U.S.C. § 1346(b)(1); Ind. Code §§ 34-30-32-6, 34-30-32-7. To constitute gross negligence, a plaintiff must prove that the defendant consciously breached a duty owed with a reckless disregard of the consequences to another. *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003). Whether a duty of care was owed is a question of law, and whether a particular act or omission was a breach of duty is a question of fact for the jury. *Id.*

Here, Mr. Ates has adequately alleged gross negligence. As to Counts I and II, the complaint supports a reasonable inference that USP Terre Haute staff were well aware of the dangers of COVID-19 and the guidance from various entities (such as the CDC and the WHO) as to how to mitigate those dangers, such as limiting inmate movement and screening inmates for COVID-19. Despite this, they failed to isolate or screen Inmate Doe after he returned from his outside medical appointment. Likewise, as to Count III, the complaint supports a

reasonable inference that USP Terre Haute staff knew of the health dangers associated with COVID-19 infections (including lung problems), knew that Mr. Ates had tested positive for COVID-19, and knew that he was complaining of symptoms consistent with a COVID-19 infection, yet failed to provide him with any treatment or evaluation beyond giving him a COVID-19 test and isolating him for 21 days. Construing the complaint liberally and making all reasonable inferences in Mr. Ates's favor, Mr. Ates's complaint pleads sufficient facts for the trier of fact to ultimately determine that USP Terre Haute employees consciously breached their duty of reasonable care with a reckless disregard for the consequences to Mr. Ates's health and life.

The United States contends that Mr. Ates's complaint "is devoid of any allegation" that "rise[s] to the level of gross negligence as a matter of law." Dkt. 38 at 4–5; dkt. 34 at 11 n.5. But "the question of whether an act or omission constitutes gross negligence is generally a question of fact," and it's only a question of law "if the facts are undisputed and only a single inference can be drawn from those facts." *McGowen v. Montes*, 152 N.E.3d 654, 661 (Ind. Ct. App. 2020). Here, it's too early to know the undisputed facts of this case and, with the liberal construction given to *pro se* pleadings, Mr. Ates's allegations are sufficient to state a gross negligence claim. Likewise, the fact that Mr. Ates did not specifically identify gross negligence as his legal theory, *see* dkt. 38 at 5, is not determinative; the allegations in his complaint—liberally construed—provide the basis for determining whether he's sufficiently stated a plausible gross negligence claim. *See Small v. Chao,* 398 F.3d 894, 898 (7th Cir. 2005) ("The law

9

does not require [a *pro se* plaintiff] to plead any legal theories . . . . Instead, we should ask whether any set of facts consistent with the complaint would give him a right to recover, no matter what the legal theory."). Accordingly, the United States' motion to dismiss Mr. Ates's complaint based on Indiana's COVID-19 immunity statute is **denied**, although Mr. Ates will be limited to proceeding with claims of gross negligence.

### C. FTCA's Quarantine Exception

The United States also argues that Counts I and II should be dismissed under the FTCA's quarantine exception. Dkt. 34 at 13–16. In response, Mr. Ates argues that the exception does not apply because the basis of his claims is the BOP's failure to impose a quarantine and because the exception has never been applied outside of quarantines relating to animals. Dkt. 37 at 24–25. In reply, the United States argues that the quarantine exception can apply to the decision not to impose a quarantine and cites one case from the Eastern District of North Carolina for the proposition that the quarantine exception applies to humans in the context of the COVID-19 pandemic. Dkt. 38 at 6–7.

Generally speaking, an individual may not sue the United States for tortious conduct committed by the government or its agents. *See United States v. Navajo Nation*, 556 U.S. 287, 289 (2009) ("The Federal Government cannot be sued without its consent."). The FTCA represents a broad waiver of that sovereign immunity for certain claims. *See* 28 U.S.C. § 1346(b)(1). However, the FTCA exempts various claims from its broad waiver of sovereign immunity, including "[a]ny claim for damages caused by the imposition or establishment of a

10

quarantine by the United States." 28 U.S.C. § 2680(f). Like all exceptions in § 2680, the quarantine exception is an affirmative defense that the United States must assert and prove. *Parrott v. United States*, 536 F.3d 629, 634–35 (7th Cir. 2008); *cf. Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014) ("The discretionary function exception[, 28 U.S.C. § 2680(a),] is an affirmative defense to liability under the FTCA that the government must plead and prove.").

Although the United States frames its quarantine-exception argument as a challenge to the Court's subject-matter jurisdiction, dkt. 34 at 13, the Seventh Circuit has held that the exceptions in § 2680 do not deprive the Court of jurisdiction but instead limit the scope of a plaintiff's right to recover. *Reynolds v. United States*, 549 F.3d 1108, 1111–12 (7th Cir. 2008). Thus, the United States' motion to dismiss based on the quarantine exception is more properly considered as a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6). *Id.* Plaintiffs are not required to plead around affirmative defenses, and an affirmative defense may be the basis for a Rule 12(b)(6) dismissal only "if the complaint alone alleges enough facts to eliminate all doubt about" the affirmative defense. *See Talevski ex rel. Talevski v. Health & Hosp. Corp. of Marion Cnty.*, 6 F.4th 713, 721 (7th Cir. 2021), *cert. granted sub nom. Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 142 S. Ct. 2673 (2022); *see also Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017).

The United States argues that the quarantine exception applies to the handling of the COVID-19 pandemic in federal prisons in 2020. In support of

11

this argument, the United States cites to several out-of-circuit cases regarding the quarantining of livestock by the USDA. *Cascabel Cattle Co., L.L.C. v. United States*, 955 F.3d 445 (5th Cir. 2020) (USDA quarantined cattle for fever ticks, some of which were injured or died after pesticides were applied); *Rey v. United States*, 484 F.2d 45, 46-48 (5th Cir. 1973) (USDA quarantined hogs for cholera, some of which died after being vaccinated); *Saxton v. United* States, 456 F.2d 1105, 1106 (8th Cir. 1972) (USDA quarantined cattle and performed laboratory tests, leading to owner's inability to sell the cattle). It also cites to one case applying the quarantine exception to the COVID-19 pandemic: *Wallace v. United States Department of Justice*, No. 5:21-CT-3035-D, 2021 WL 2853692 (E.D.N.C. June 24, 2021), *aff'd*, No. 21-7017, 2022 WL 1024613 (4th Cir. Apr. 6, 2022).

In *Wallace*, an inmate sought to bring FTCA claims based on allegations that, after his prison issued a lockdown order in response to the COVID-19 virus, prison staff failed to secure the corridor of a quarantine dormitory that had confirmed and/or suspected cases of COVID-19, thereby allowing the virus to spread. *Id.* at *1. The U.S. District Court for the Eastern District of North Carolina screened the complaint under 28 U.S.C. § 1915 and dismissed it, finding that the quarantine exception applied without analyzing or receiving briefing about the applicability of the quarantine exception outside of livestock quarantines. *Id.* at *2. Likewise, it does not appear that the inmate raised the question of the applicability of the quarantine exception outside the livestock context to the Fourth Circuit. *Wallace*, No. 21-7017, dkt. 9 (4th Cir. Aug. 2, 2021) (appellant's informal brief, discussing the discretionary function exception but

12

not whether the quarantine exception applies outside of the context of livestock quarantines). As a result, the Court does not find the *Wallace* case to be particularly persuasive as to whether and how the quarantine exception should apply outside the context of livestock quarantines.

In addition, the quarantine exception is an affirmative defense, which means that the Court cannot dismiss Mr. Ates's claims on the basis of the defense unless the allegations of Mr. Ates's complaint alone eliminate all doubt about the defense. *Talevski*, 6 F.4th 721. In his complaint, Mr. Ates alleges that he contracted COVID-19 because the BOP failed to isolate or even screen Inmate Doe after Inmate Doe returned from an outside medical appointment and that he tested positive for COVID-19 after the BOP decided to lockdown his unit. The United States—without citation to authority—equates the lockdown procedures (or lack thereof) at Mr. Ates's prison with the "quarantine" of the statutory quarantine exception, dkt. 34 at 16, but the United States asks too much at the motion to dismiss stage. *See Pressley v. United States*, No. 2:21-cv-202-JMS-MG, 2023 WL 22192, at *4 (S.D. Ind. Jan. 3, 2023) (denying motion to dismiss based on affirmative defense of the quarantine exception).

Accordingly, insofar as it relies on the quarantine exception to the FTCA, the United States' motion to dismiss is **denied**.

### D. Negligence *Per Se*

In Count I, Mr. Ates pursues a negligence *per se* claim based on allegations that Mr. Ates contracted COVID-19 as a result of USP Terre Haute staff having mishandled Inmate Doe after his return from an outside medical appointment.

13

The United States argues that Count I should be dismissed because Mr. Ates has failed to identify a statute that supplies the applicable standard of care, which is required to succeed on a claim of negligence *per se*. Dkt. 34 at 26–28. In response, Mr. Ates points the Court to the following as the bases for his claim of negligence *per se*: (1) 18 U.S.C. §§ 4001(b)(2), 4042(a)(2); (2) Indiana law, which recognizes that a custodian has a legal duty to exercise reasonable care to preserve the life, health, and safety of a person in custody; (3) 28 C.F.R. § 500 *et seq.*; (4) BOP Policy Statements 6010.05, 6013.01, and 6190.05; and (5) various BOP measures implemented pursuant to guidance issued by the CDC, WHO, National Institutes of Health ("NIH"), Occupational Safety and Health Administration ("OSHA"), Indiana Department of Public Health, and Office of the Vice President. Dkt. 37 at 15−16. In reply, the United States argues that none of those authorities can serve as the basis of a negligence *per se* claim. Dkt. 38 at 7.

Under Indiana law, an action for negligence has three elements: "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Stachowski v. Est. of Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018) (cleaned up). "[T]o satisfy the duty element of a negligence claim, a plaintiff must demonstrate that a defendant had a duty toward the plaintiff that arose either at common law or by statute." *Gresser v. Reliable Exterminators, Inc.*, 160 N.E.3d 184, 190 (Ind. Ct. App. 2020). A claim of negligence *per se* requires a plaintiff to show that the defendant violated a statute or ordinance without an excuse. *Id.* Importantly,

14

> the doctrine of negligence *per se* doesn't concern the **duty** element of a negligence action; rather, the doctrine assumes the existence of a common-law duty of reasonable care, and the court is asked to adopt the standard of conduct set forth in a statute or ordinance . . . as the standard of conduct required under that preexisting duty, so that a violation of the statute or ordinance serves to satisfy the **breach** element of a negligence action. In other words, a finding of negligence *per se* merely represents a judicial acceptance of the legislative judgment that acts in violation of the statute constitute unreasonable conduct.

*Stachowski,* 95 N.E.3d at 544 (cleaned up). Put another way, "if a plaintiff argues the defendant's violation of a statute or ordinance proves the breach of that existing common-law duty, then the plaintiff [is raising] a negligence-*per-se* claim." *Gresser,* 160 N.E.3d at 190. Moreover, negligence *per se* "does not necessarily mean that there is liability *per se.*" *Erwin v. Roe,* 928 N.E.2d 609, 616 (7th Cir. 2010). Instead, "[t]he violation of statutory duty is not actionable negligence unless it is also the proximate cause of the injury." *Id.* (cleaned up).

Here, Mr. Ates cites to federal regulations, BOP policy and guidance, caselaw, and statutes to form the basis of his negligence *per se* claim. First, while it's unclear whether a violation of federal regulations can even form the basis of a negligence *per se* claim under Indiana law, *see Zimmerman v. Moore,* 441 N.E.2d 690, 696 (Ind. Ct. App. 1982), Mr. Ates has not identified a federal regulation that was violated at USP Terre Haute or alleged facts supporting a reasonable inference that such violation proximately caused his COVID-19 infection. He only refers to "28 C.F.R. § 500 *et seq.*," a collection of regulations relating to administration of the BOP, *e.g.,* 28 C.F.R. § 506 (the inmate commissary account). Absent some plausible explanation of how USP Terre Haute staff violated a specific regulation and how such violation proximately

15

caused Mr. Ates to contract COVID-19, citation to the Code of Federal Regulations sections that apply to the BOP cannot serve as the basis of a negligence *per se* claim.

Second, Mr. Ates claims that violations of BOP policy statements and BOP measures implemented pursuant to federal and state guidance form the basis of his negligence *per se* claim. *See* dkt. 1 at 18. But, under Indiana law, violations of such policies and guidance—not violations of statutes—cannot form the basis of a negligence *per se* claim. *Stachowski*, 544 N.E.3d at 544 ("A claim of negligence per se requires plaintiffs to show that the defendant *violated a statute* without an excuse." (emphasis added)); *Lachenman v. Stice*, 838 N.E.2d 451, 463 (Ind. Ct. App. 2005) (concluding that violation of property owner's association rules and regulations do not support a determination of negligence *per se*). Instead, such violations may be submitted to the trier of fact as evidence of negligence. *See Lachenman*, 838 N.E.2d at 463; *Zimmerman*, 414 N.E.2d at 696.

Third, Mr. Ates cites to cases that state that prisons owe inmates a duty of care. *See, e.g., Sauders v. Cty. of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998). But under Indiana law, a negligence *per se* claim must be based on violation of a statute or ordinance—not based on duties of care found in caselaw. *See, e.g., Gresser*, 160 N.E.3d at 190 ("[I]f a plaintiff argues the defendant's violation of a statute or ordinance proves the breach of that existing common-law duty, then the plaintiff [is raising] a negligence-*per-se* claim.").

Finally, Mr. Ates points to two statutes as bases for his negligence *per se* claim: 18 U.S.C. §§ 4001(b)(2) and 4042(a)(2). To "satisfy the breach element of

16

a negligence action," these statutes must "suppl[y] a defendant's standard of care." *See Stachowski*, 95 N.E.3d at 544.

First, § 4042(a)(2) provides that the BOP "shall . . . provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise." *Id.* While courts have held that § 4042 imposes a duty of reasonable care or ordinary diligence on the BOP, *see, e.g., Owens v. Haas*, 601 F.2d 1242, 1249 (2d Cir. 1979), it does not supply a standard of care: the Seventh Circuit has recognized that § 4042(a)(2) does "not . . . direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997). Section 4042(a)(2) thus cannot be the basis of Mr. Ates's negligence *per se* claim. *Cf. Bunche v. United States*, No. 17-6190, 2018 WL 4959029, at *7 (6th Cir. June 20, 2018) (Larsen, J., concurring in part) ("18 U.S.C § 4042(a) . . . offers no substantive standards by which to judge whether the BOP has provided the appropriate 'care.'").

Put another way, nothing in § 4042(a)(2) represents a legislative judgment that the alleged actions of USP Terre Haute staff in this case—returning Inmate Doe to his unit after an outside medical appointment without isolating him or screening him for COVID-19—breached the duty of reasonable care. Instead, in relying on § 4042(a)(2), Mr. Ates is really just arguing that USP Terre Haute staff breached their duty of reasonable care when they failed to isolate or even screen

17

Inmate Doe after he returned from his outside medical appointment. That is a common negligence claim, not a negligence *per se* claim, which Mr. Ates separately sets forth in Count II.

Mr. Ates's reliance on § 4001(b)(2) fails for similar reasons. Section 4001(b)(2) provides, "The Attorney General may establish and conduct industries, farms, and other activities and classify the inmates; and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation." 18 U.S.C. § 4001(b)(2). Even assuming that this section creates a duty of care toward federal inmates, it does no more than that. Like § 4042(a)(2), § 4001(b)(2) fails to specify a standard of care and therefore cannot serve as the basis for a negligence *per se* claim.

None of the cases Mr. Ates cites holds to the contrary. To state a claim for negligence *per se*, Mr. Ates must cite a statute defining when the BOP's statutory duty was breached. He has not identified any such statute.

Accordingly, the United States' motion to dismiss is **granted** as to Count I (the negligence *per se* claim).

### E. Causation

Finally, the United States argues that the Court should dismiss Count II because Mr. Ates fails to adequately allege causation. Specifically, the United States alleges that it is implausible that Inmate Doe was able to infect 75 other inmates within two days. Dkt. 38 at 5–6.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell*

18

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

Under this standard, Mr. Ates has adequately alleged that the BOP's failure to isolate or screen Inmate Doe after his return from an outside medical appointment caused Mr. Ates to contract COVID-19. Given the realities of prison conditions, it does not strike the Court as implausible that a single inmate could infect 75 other inmates with COVID-19 within two days. It may, of course, be difficult for Mr. Ates to prove that he contracted COVID-19 from Inmate Doe, but Mr. Ates should be afforded the opportunity to develop facts relating to this issue through discovery rather than have his claim terminated at the pleading stage. *Twombly*, 550 U.S. at 556 ("[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (cleaned up)).

Accordingly, the United States' motion to dismiss Count II for failure to adequately allege causation is **denied**.

### III. Conclusion

The Court finds that the parties' briefs were sufficient for it to decide the United States' motion to dismiss without a hearing; therefore, Mr. Ates's motion for a hearing, dkt. [40], is **denied**. For the reasons stated above, the United

States' motion to dismiss, dkt. [33], is **granted** to the extent that Count I (negligence *per se*) is **dismissed for failure to state a claim upon which relief may be granted** but **denied in all other respects**, except that Mr. Ates will be limited to proceeding on Counts II and III under a theory of gross negligence.

**SO ORDERED.**

Date: 2/2/2023

                                              James Patrick Hanlon
                                              United States District Judge
                                              Southern District of Indiana

Distribution:

ROY EDWARD ATES, JR.
88532-380
TERRE HAUTE - FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Justin R. Olson
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
justin.olson2@usdoj.gov